UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JAMES W. DUNN,<br><br>               Plaintiff,<br><br>v.<br><br>PIERCE COUNTY, et al.,<br><br>               Defendants. | CASE NO. C16-5148BHS<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Plaintiff James Dunn's ("Dunn") motion for partial summary judgment (Dkt. 23) and Defendants Pierce County, Angela Steben, and Ara Steben's ("Defendants") motion for summary judgment (Dkt. 27). The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file and hereby rules as follows:

**I. PROCEDURAL HISTORY**

On February 2, 2016, Dunn filed a complaint against Defendants in Pierce County Superior Court for the State of Washington. Dkt. 1-2. Dunn asserted violations of his Fourth and Fourteenth Amendment rights as well as his rights under the Washington constitution and tort laws. *Id.*

ORDER - 1

On February 24, 2016, Defendants removed the matter to this Court. Dkt. 1.

On March 2, 2016, Defendants filed a motion to dismiss. Dkt. 7. On April 15, 2016, the Court granted the motion as to Dunn's claim for outrage, denied the remainder of the motion, and granted Dunn leave to amend his outrage claim. Dkt. 13.

On April 22, 2016, Dunn filed an amended complaint asserting causes of action "for false arrest, false imprisonment, and violation of civil rights against Defendants Steben only (state law, Article 1 § 3 and Article 1 § 7 of the Washington State Constitution, and the Fourth Amendment and Fourteenth Amendment to the United States Constitution)." Dkt. 14, ¶ 3.1. Dunn did not allege outrage in the amended complaint. On May 5, 2016, Defendants answered and asserted a counterclaim for malicious prosecution. Dkt. 15.

On January 18, 2017, Dunn filed a motion for partial summary judgment. Dkt. 27. On February 13, 2017, Defendants responded. Dkt. 33. On February 17, 2017, Dunn replied. Dkt. 37.

On January 18, 2017, Defendants filed a motion for summary judgment. Dkt. 27. On February 6, 2017, Dunn responded. Dkt. 29. On February 10, 2017, Dunn replied. Dkt. 30. On February 13, 2017, Dunn filed a surreply requesting that the Court strike certain material as hearsay. Dkt. 32[1].

---

[1] The motion is denied as moot because the evidence is irrelevant to the consideration of the issues before the Court.

## II. FACTUAL BACKGROUND

In the days before February 13, 2014, a strong wind storm "wreaked havoc" on the area surrounding Dunn's residence. Dkt. 25, Declaration of James Dunn ("Dunn Dec."), ¶ 1. On February 13, 2014, Dunn was raking and cleaning wind-downed branches and leaves around his residence. *Id.*, ¶ 2. Dunn claims that the branches and debris were also strewn across a "30-foot-wide private gravel easement road that crosses [his] property for the benefit of [himself] and [his] neighbors." *Id.*, ¶ 4. After cleaning up the debris, Dunn took a break and went inside his garage, "closing the door behind [him]." *Id.*, ¶ 7.

That same day, Pierce County Deputy Ara Steben received notification that police officers were needed out at the Dunn property. Dkt. 28-1, Deposition of Ara Steben ("Steben Dep.") at 36. Deputy Steben was aware of and had personally responded to numerous complaints between Dunn and his neighbors, some involving violence. *Id.* at 26–29. Based on these previous interactions, Deputy Steben was aware of the gravel easement. *Id.* at 39. Upon arriving at the scene, Deputy Steben first went to Dunn's neighbors, the Bowers, because the Bowers had placed the call for help. *Id.* at 40. Deputy Steben remembers the Bowers informing him that Dunn had been throwing debris into the roadway on the easement and, when Mrs. Bowers drove down the easement earlier that day, she thought Dunn had struck her car with a rake. *Id.* at 43. Deputy Steben inspected the car and observed scratches on the wheel. *Id.* at 45.

After speaking with the Bowers, Deputy Steben approached the Dunn residence. *Id.* at 47. Dunn and Deputy Steben provide differing accounts of what transpired next. Dunn declares as follows:

> While I was in the garage with the door closed, I heard a pounding on the garage door.
> In response to the pounding, I opened the door approximately 8 inches to see who was at my door. Deputy Steben was at the door and asked what was happening in the gravel road. I explained I was cleaning up the branches and debris which had been knocked down by the windstorm. Without further question or comment, Deputy Steben pushed the door out of my hands and came into my workshop. He immediately put my hands behind my back and handcuffed me. He did not explain the reason for my arrest.

Dunn Dec., ¶¶ 7-8.

According to Deputy Steben, he does not remember knocking on the door, but he does remember that Dunn was either inside or at the garage door when Deputy Steben began to ask questions. *Id*. at 49. Deputy Steben and Dunn talked for one to two minutes before Deputy Steben placed Dunn under arrest. *Id*. at 52. Deputy Steben did not have a warrant for Dunn's arrest and had not personally witnessed Dunn commit a misdemeanor in his presence. *Id*. at 48, 52. Deputy Steben testified that he arrested Dunn for disorderly conduct. *Id*. at 52. Deputy Steben handcuffed Dunn, placed him in the back of the police car, and booked him into Tacoma-Pierce County Jail. *Id*.

### III. DISCUSSION

Dunn moves for partial summary judgment on liability and on Defendants' counterclaim. Dkt. 23. Defendants move for summary judgment because probable cause existed for the arrest and tort claims do not exist under the Washington constitution. Dkt. 27.

> While I was in the garage with the door closed, I heard a pounding on the garage door.
> In response to the pounding, I opened the door approximately 8 inches to see who was at my door. Deputy Steben was at the door and asked what was happening in the gravel road. I explained I was cleaning up the branches and debris which had been knocked down by the windstorm. Without further question or comment, Deputy Steben pushed the door out of my hands and came into my workshop. He immediately put my hands behind my back and handcuffed me. He did not explain the reason for my arrest.

Dunn Dec., ¶¶ 7-8.

According to Deputy Steben, he does not remember knocking on the door, but he does remember that Dunn was either inside or at the garage door when Deputy Steben began to ask questions. *Id*. at 49. Deputy Steben and Dunn talked for one to two minutes before Deputy Steben placed Dunn under arrest. *Id*. at 52. Deputy Steben did not have a warrant for Dunn's arrest and had not personally witnessed Dunn commit a misdemeanor in his presence. *Id*. at 48, 52. Deputy Steben testified that he arrested Dunn for disorderly conduct. *Id*. at 52. Deputy Steben handcuffed Dunn, placed him in the back of the police car, and booked him into Tacoma-Pierce County Jail. *Id*.

### III. DISCUSSION

Dunn moves for partial summary judgment on liability and on Defendants' counterclaim. Dkt. 23. Defendants move for summary judgment because probable cause existed for the arrest and tort claims do not exist under the Washington constitution. Dkt. 27.

A.     **Summary Judgment Standard**

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt"). *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The Court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The Court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The

nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson*, 477 U.S. at 255). Conclusory, nonspecific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

**B.     Section 1983 Claims**

Section 1983 is a procedural device for enforcing constitutional provisions and federal statutes; the section does not create or afford substantive rights. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). In order to state a claim under section 1983, a plaintiff must demonstrate that (l) the conduct complained of was committed by a person acting under color of state law and that (2) the conduct deprived a person of a right, privilege, or immunity secured by the Constitution or by the laws of the United States. *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986).

In this case, Dunn asserts claims under the Fourth and Fourteenth Amendments. Dkt. 14, ¶ 3.1. Defendants fail to address Dunn's Fourteenth Amendment claim under § 1983. In his response, Dunn asserts that the ordeal violated his Fourteenth Amendment rights. Dkt. 29 at 6. While it seems that Dunn's Fourteenth Amendment claim revolves around the seizure and would be coextensive with the Fourth Amendment claim, it is plausible that Dunn intended to assert a claim for separate government action that shocked the conscious. *See*, *e.g.*, *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 372 (9th Cir. 1998), *as amended* (Nov. 24, 1998). Thus, the Court considers this

claim outside the scope of Defendants' motion.  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000) (moving party has the initial burden).  Moreover, the Court declines to grant summary judgment *sua sponte* on this claim because Dunn was not on notice that he was required to produce evidence to support the claim.  *Oluwa v. Gomez*, 133 F.3d 1237, 1239 (9th Cir. 1998) ("*Sua sponte* summary judgment is only appropriate if the losing party has 'reasonable notice that the sufficiency of his or her claim will be in issue.'") (quoting *Buckingham v. United States*, 998 F.2d 735, 742 (9th Cir. 1993)); *see also Celotex*, 477 U.S. at 326 (*sua sponte* summary judgment appropriate only where losing party is on notice that she had to come forward with all of her evidence).

Regarding Dunn's Fourth Amendment claim, the Court agrees with Defendants that probable cause existed for Dunn's arrest.  "To prevail on [a] § 1983 claim for false arrest . . . [a plaintiff must] demonstrate that there was no probable cause to arrest him." *Cabrera v. City of Huntington Park*, 159 F.3d 374, 380 (9th Cir. 1998).  "[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed."  *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004).  "[A]n arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause."  *Id*. at 153.  The officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause."  *Id*.

Although Deputy Steben charged Dunn with disorderly conduct, Defendants argue that Deputy Steben had probable cause to arrest Dunn for disorderly conduct as well as

malicious mischief. Dkt. 27 at 8–9. The Court agrees with the arguments regarding malicious mischief. In Washington, "[a] person is guilty of malicious mischief in the third degree if he or she . . . [k]nowingly and maliciously causes physical damage to the property of another . . . ." RCW 9A.48.090. Deputy Steben was informed that Mrs. Bowers thought that Dunn hit her car with a rake causing damage to the car. Dunn contends that, even if his rake hit her car, there was no evidence to establish that the strike was "knowing or malicious." Dkt. 37 at 3. To the contrary, based on Dunn's history of interactions with his neighbors and prior assaults to his neighbors, a reasonable officer could conclude that Dunn's strike was intentional. If there was zero history between the neighbors, Dunn's position would be more reasonable and resolution of this issue would be more difficult. However, Deputy Steben was aware of and had personally responded to numerous complaints between Dunn and his neighbors, some involving violence. Steben Dep. at 26–29. Therefore, the Court concludes that Deputy Steben had probable cause to arrest Dunn.

Although the Court concludes that Deputy Steben had probable cause to arrest Dunn, this does not dispose of Dunn's Fourth Amendment claim because questions of fact exist as to where Deputy Steben arrested Dunn. In his declaration, Dunn claims that "Deputy Steben pushed the door out of [his] hands and came into [his] workshop. [Deputy Steben] immediately put [Dunn's] hands behind [his] back and handcuffed [him]." Dunn Dec., ¶ 8. Deputy Steben counters that he does not have a "specific recollection of the exact location of Dunn at the moment of his arrest other than that he was in the area of the doorway." Dkt. 35, ¶ 10. Taking the facts in the light most

favorable to Dunn, "searches and seizures inside a home without a warrant are presumptively unreasonable . . . ." *Groh v. Ramirez*, 540 U.S. 551, 559 (2004) (internal quotation marks omitted).  The presumption may be overcome with several exceptions, but Defendants fail to assert any such exception.  Therefore, the Court denies Defendants' motion on Dunn's Fourth Amendment claim because questions of fact exist for trial.

Finally, on this issue, Deputy Steben contends that he is entitled to qualified immunity because the law was not clearly established.  Dkt. 27 at 11–12.  Contrary to this position, "the Fourth Amendment has drawn a firm line at the entrance to [a] house.  Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant."  *Payton v. New York*, 445 U.S. 573, 590 (1980).  The law was clearly established on this issue.  Therefore, the Court denies Deputy Steben's motion for summary judgment based on qualified immunity.

**C.     False Imprisonment and False Arrest**

In Washington, the existence of probable cause is a complete defense to an action for false arrest or false imprisonment.  *Hanson v. City of Snohomish*, 121 Wn.2d 552, 563–64 (1993).

In this case, the Court has concluded that questions of fact exist on the issue of where Dunn was arrested.  It is unclear whether Washington tort law tracks the Fourth Amendment such that Deputy Steben's alleged unlawful entry into Dunn's garage may form the basis for a false arrest and a false imprisonment claim.  Thus, the Court declines to grant either party's motion on this issue.

Conversely, if Deputy Steben arrested Dunn outside his garage, then Defendants are entitled to summary judgment on these claims. The issue under state law is slightly different than under federal law because a state statute prohibits officers from arresting misdemeanor offenders in certain situations. "A police officer may arrest a person without a warrant for committing a misdemeanor or gross misdemeanor only when the offense is committed in the presence of an officer, except as provided in subsections (1) through (12) of this section." RCW 10.31.100. The first exception to this prohibition permits an officer to arrest an individual if the officer has "probable cause to believe that a person has committed or is committing a misdemeanor or gross misdemeanor, involving physical harm or threats of harm to any person or property . . . ." *Id*. Deputy Steben had probable cause to believe that Dunn had damaged Mrs. Bower's property. Thus, probable cause for an otherwise lawful arrest is a complete defense to Dunn's claims for false imprisonment and false arrest. Accordingly, under the facts that the arrest occurred outside Dunn's garage, the Court concludes that Defendants are entitled to summary judgment on these claims.

### D. Dunn's Other Claims

Defendants move for summary judgment on Dunn's claims under the Washington constitution and, to the extent any are asserted, his claims under the federal constitution independent of § 1983. Dkt. 27 at 12–13. Dunn counters that, because the principle of the federal constitution are embodied in the state laws, a violation of state law should result in a violation of federal law. Dkt. 29 at 11–12. Dunn cites no authority for this novel proposition. As such, the Court elects to address each claim on its own merits.

Section 1983 does not provide relief for violations of state law.  *Baker v. McCollan*, 443 U.S. 137, 142 (1979) ("a public official is liable under § 1983 only if he causes the plaintiff to be subjected to deprivation of his constitutional rights.").  Similarly, Washington courts do not recognize a tort cause of action for violations of the Washington constitution.  *Janaszak v. State*, 173 Wn. App. 703, 723-24 (2013).  Therefore, the Court grant Defendants' motion on these claims and dismisses these claims with prejudice.

**E.     Defendants' Counterclaim**

Dunn moves for summary judgment on Defendants' counterclaim for malicious prosecution arguing that it fails if Dunn proves liability on his claims.  Dkt. 23 at 10.  Because the Court denies Dunn's motion for summary judgment on liability, the Court also denies Dunn's motion on this counterclaim.

## IV. ORDER

Therefore, it is hereby **ORDERED** that Dunn's motion for partial summary judgment (Dkt. 23) is **DENIED**, Dunn's motion to strike (Dkt. 32) is **DENIED** as moot, and Defendants' motion for summary judgment (Dkt. 27) is **GRANTED in part** and **DENIED in part**.

Dated this 22nd day of March, 2017.

BENJAMIN H. SETTLE
United States District Judge